FITZPATRICK *et al. v.* KELLNER.

(Division A. Feb. 26, 1940. Suggestion of Error Overruled March 25, 1940.)

[193 So. 911. No. 34070.]

D. S. Strauss, of Greenville, for appellants.

**E. J. Bogen,** of Greenville, for appellee.

Argued orally by **D. S. Strauss**, for appellant.

**Anderson, J.,** delivered the opinion of the court.

Appellee Kellner, an attorney at law of Greenville, intervened, without objection to that manner of procedure on the part of appellants, in the matter of the administration and settlement of the estate of their aunt, Mrs. Kate Archer, claiming that he was entitled to a one-third undivided interest in their share in their aunt's estate as a contingent fee for his services in establishing and recovering for them such share. The cause was heard on bill, answer, and evidence, and a decree was rendered in favor of appellee granting the relief prayed for. From which decree, appellants prosecute this appeal.

Appellants, Adelaide and Annie Fitzpatrick, were the nieces and sole heirs of Mrs. Archer. Leaving off the signatures, the following is a copy of the contingent fee contract involved:

"This agreement between Miss Adelaide C. Fitzpatrick

and Miss Annie Nell Fitzpatrick, Parties of the First Part, and Ernest Kellner, Party of the Second Part, witnesseth:

"The parties of the First Part hereby employ the Party of the Second Part to ascertain and recover their interest in the estate of Mrs. Kate C. Archer, deceased, and the Party of the Second Part hereby undertakes said employment upon the following understanding:

"That in the event the Party of the Second Part is unable to make any recovery for the Parties of the First Part he is to receive no compensation whatever, but the Party of the Second Part is to receive one-third (1/3) of any recovery he shall make for the Parties of the First Part, either in kind or in money.

"Witness our signatures, this, the 10th day of March, 1939."

The evidence is without any material conflict. Mrs. Archer died in 1937. She owned lands in this state and in Arkansas worth something like $50,000. She had owned a home in the City of Greenville, which she conveyed, with its furnishings, to appellants some time before her death. In April, 1930, she entered into a written contract with T. B. Stone, by the terms of which she employed Stone to take charge of her property and manage it and attend to all "legal matters" connected therewith. In consideration of such services she bound herself to execute a warranty deed to Stone to one-fourth undivided interest in all of her property of every kind, except her homestead, and, in addition, to execute a will "bequeathing to party of the second part an additional one-fourth interest in and to the remaining portion of her property at her death, except the homestead and its contents." Thereafter, during the same month, she executed and delivered to Stone a deed to a one-fourth undivided interest in all of her lands in Arkansas and Mississippi, except the homestead in Greenville. At her death she left a will, dated the 17th of November, 1936, by the terms of which she devised and bequeathed to

appellants a one-fourth undivided interest in all of her real and personal property and to Stone a one-fourth undivided interest in the same, except the home and furnishings. From the death of Mrs. Archer up to April, 1939, Stone had the charge and management of all the property. Appellants were dissatisfied with his management and employed appellee to enforce their rights against the property and Stone. The employment was evidenced by the contract above set out. Thereupon, appellee, on behalf of appellants, filed a bill in the chancery court against Stone in which he sought to set aside the will of Mrs. Archer upon the ground that Stone procured it by undue influence, and, in addition, that it was not properly witnessed. The bill also charged that Stone had mismanaged the estate and asked for an accounting on his part. Appellants as sole heirs of Mrs. Archer, under the law, inherited all of her estate not disposed of by will to someone else. Upon the filing of the bill, Stone employed Mr. Farish, attorney of Greenville, to represent him in the litigation. Mrs. Archer had given a mortgage on the property or some of it to secure an indebtedness of hers. Some of the lands had been sold for their taxes; all of them were being advertised for their unpaid taxes. Appellee and Farish consulted together on one or more occasions in reference to the interests of their clients. They had their clients borrow from a bank in Greenville $5000 with which to pay taxes and other expenses. This loan was secured by a mortgage on the lands. Appellee rendered other services of value to appellants.

Stone never answered the bill. It became unnecessary for the following reasons: After it was filed, appellee learned for the first time of the contract between Mrs. Archer and Stone of April 4, 1930, and the conveyance made in pursuance thereof by Mrs. Archer to Stone May 6, 1930, although both of them were recorded in the deed records of the office of the chancery clerk of Washington County. All along Stone was only claiming

a one-half undivided interest in the land. When this information came to appellee he advised them that under the contract and the deed Stone was entitled to a one-half undivided interest in the property regardless of whether the will was valid or not, and therefore it would be useless to go on contesting a will.

Appellee's services not being needed further, he demanded of appellants under his contingent fee contract one-third undivided interest in their one-half interest in the property. This demand they refused to accede to, but offered to pay him a reasonable compensation for his services. This offer appellee declined, and brought suit in the manner above stated to enforce his claim, with the result stated.

It appears that a fair interpretation of the controlling facts is this: When appellants employed appellee to attack the will and obtain an accounting from Stone, if they had known the meaning of the contract and conveyance of May, 1930, they would not have sought to overturn the will; and that if appellee had known of such contract and conveyance he would have advised appellants that Stone had a half undivided interest in the lands, whether the will stood or not, and therefore it would be useless to pursue the contest of the will any further. Appellee's own evidence in the case is to that effect. Putting it differently, when appellee was employed, Stone had a half undivided interest in the lands and was claiming no more. If appellants and appellee had known those facts no steps would have been taken to contest the will. The controlling principles of law are laid down in Section 184, page 360, of volume 5, American Jurisprudence in this language: "A contract for a contingent fee must be made in good faith, without suppression of facts or of apprehended difficulties, and without undue influence of any sort or degree; and the compensation bargained for must be just and fair, so that the transaction may be characterized throughout by good faith to the client. If the contract is shown to have

been obtained by fraud, mistake, or undue influence, if it is so excessive in proportion to the services to be rendered as to be in fact oppressive or extortionate, if the attorney suppresses the facts of the case, or if he uses any unfairness in securing it, the contract will be held invalid."

There is no evidence whatever of any fraud practiced on the part of appellee. On the contrary his conduct all the way through evidenced good faith. There was, however, undoubtedly a mutual mistake of facts between appellants and appellee. Appellee did not know of the existence of the contract and conveyance, and if appellants knew of them they were evidently ignorant of their meaning and effect. Appellee is entitled to reasonable compensation for the services he rendered appellants; they were valuable services; they consisted of preserving the property from forfeiture for taxes and necessary counsel in other respects.

Reversed and remanded.